

Adam Hollander
(646) 893-0482
767 Third Ave, 14th Fl
New York, NY 10017

January 16, 2026

**BY ECF**
The Honorable Valerie Figueredo
Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007-1312

  Re: <u>Duluth Screen Printing, LLC v. Kornit Digital North America, Inc. et al.,</u> No. 25-cv-9441 (AT) (VF) (S.D.N.Y.)

Dear Judge Figueredo:

  We represent Plaintiff Duluth Screen Printing, LLC ("DSP") in the above-referenced action and write jointly with Defendants Kornit Digital North America, Inc. ("Kornit North America") and Kornit Digital Ltd. ("Kornit Digital," and collectively "Kornit").

  Pursuant to the Court's Order (Dkt. No. 5) and Initial Pretrial Scheduling Order (Dkt. No. 6), the parties write to (i) advise the Court that the parties do not consent at this time to conducting all further proceedings before the assigned Magistrate Judge and (ii) to address the issues identified in Paragraph 4 of the Initial Pretrial Scheduling Order. Pursuant to Paragraph 5 of the Initial Pretrial Scheduling Order, the parties also submit a jointly proposed Case Management Plan and Scheduling Order based on Your Honor's model concurrently with this letter.

  **I. A Brief Description of the Case, Including the Factual and Legal Bases for the Claims and Defense(s)**

  DSP, a Minnesota-based garment printing company, brings this action to recover damages stemming from its purchase of an "Atlas MAX" garment printer. DSP alleges that Kornit, the Atlas MAX's manufacturer, fraudulently induced DSP to purchase the Atlas MAX by making numerous false representations regarding its capabilities and print quality. DSP alleges that upon installation, the Atlas MAX failed to operate as warranted—for example, by printing in low quality or failing to print at all—resulting in missed deadlines, customer returns, and lost sales. DSP also alleges that Kornit failed to repair the Atlas MAX and engaged in a number of bad-faith behaviors to prevent the return of the Atlas MAX, such as declining to transmit written reports documenting the Atlas MAX's operational issues. Ultimately, DSP alleges that the Atlas MAX was unusable, leading DSP to hibernate the machine and attempt to resell it. DSP finally alleges that Kornit has interfered with its resale efforts by deterring potential buyers.

  DSP brings claims for fraudulent inducement, breach of contract, breach of the implied covenant and good faith and fair dealing, breach of express warranty, breach of the implied warranty of merchantability, revocation of acceptance, and tortious interference with prospective business

relations. DSP further maintains that the purported limitations on remedies and damages Kornit invokes are unenforceable due to, among other reasons, Kornit's bad faith.

Kornit strongly disputes liability. First, Kornit met its contractual obligations, including both its obligation to deliver and install the Atlas MAX and its repair obligations under the parties' purchase agreement for the Atlas Max (the "Agreement") and under the written warranty outlined in the terms and conditions incorporated therein (the "Warranty"). Indeed, far from bad faith, the Complaint acknowledges many service visits to DSP's offices by Kornit pursuant to the Warranty, which was both costly and extended in good faith by Kornit. Second, DSP cannot both purport to enforce the parties' written agreements, while selectively ignoring the written limitations therein. The Complaint, which seeks incidental and consequential damages far in excess of the purchase price, is impermissible given the written limitation on: (i) damages for any alleged breach, capping them at "the total amount paid by [DSP] to Kornit for the specific product…giving rise to a claim against Kornit," *see* ECF No. 1-3 (§ 10.1), and (ii) the limitation of the Warranty to repair and replace as the "sole and exclusive remedy," *id.* (§ 8.1(a)).  Finally, in an effort to sidestep the Agreement's limitations, DSP asserts a variety of legally deficient tort claims, including fraud, tortious interference with prospective business relations, and others, all of which should be dismissed.

## II.     Any Contemplated Motions

Upon filing this action, DSP filed a Motion to File Redacted Complaint and Exhibit out of an abundance of caution in light of confidentiality provisions in the Atlas MAX's terms and conditions, (*See* Dkt. Nos. 10-14), although DSP defers to the Court's discretion as to whether there are in fact sufficient grounds for such redaction. On January 8, 2025, the Court ordered Kornit to "file any sealing motion by January 16, 2026." (Dkt. No. 27.) Kornit intends to file a letter brief in support of DSP's Motion to File Redact Complaint and Exhibit on January 16, 2026.

Further, as indicated by the parties' joint letter dated December 9, 2025 (Dkt. No. 25), Kornit intends to move to dismiss, and the Court has endorsed the parties' proposed pre-motion letter schedule (Dkt. No. 26).

## III.    The Prospect for Settlement

Although the parties have discussed the prospect for settlement, it does not presently appear that the parties will reach a near-term resolution of this dispute.

\* \* \*

The parties thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Adam Hollander*

Adam Hollander

2

Cc: Counsel of record (via ECF)

